UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

---

United States of America, *ex rel.*
Bryan Sandager,

Court File No. _________

Plaintiff,

v.

**COMPLAINT**

Hewlett Packard Company, CDW Government, Inc., CDW Corporation, Dell Marketing L.P., Dell, Inc., Vion Corporation, ImmixTechnology, Inc., Government Acquisitions, Inc., Emtec Federal, Inc., Emtec, Inc., Force 3, Inc., Sun Microsystems Federal, Inc., Sun Microsystems, Inc., Unistar-Sparco Computers, Inc., Lyme Computer Systems, Inc., Insight Public Sector, Inc., Red River Computer Company, MPC-G, LLC, MPC Corporation, MA Federal, Inc., Marzik, Inc., Promark Technology, Inc., World Wide Technology, Inc., AC Technology, Inc., A&T Marketing, Inc. d/b/a A&T Networks, PC Specialists, Inc. a/k/a Technology Integration Group, PC Mall Gov, Inc., Commercial Data Systems, Inc., GovConnection, Inc.,Computech International, Inc., Dynamic Systems, Inc., Oroday, Inc., d/b/a Digital Consulting Services, and Unknown Companies A through Z,

**FILED *IN CAMERA* AND UNDER SEAL**

**JURY TRIAL DEMANDED**

Defendants.

---

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. Relator Bryan Sandager ("Relator") brings this action on behalf of the United States of America against Defendants for treble damages and civil penalties arising from

7/31/08

the Defendants' false statements and false claims in violation of the Civil False Claims Act (the "Act"), 31 U.S.C. § 3729, *et seq.* The violations alleged herein arise out of a scheme by Defendants and other unnamed companies (designated "Unknown Companies A through Z") to fraudulently sell to the United States Government (the "Government") computer hard disk drives ("HDDs") manufactured in unapproved countries in violation of the Trade Agreements Act of 1979, 19 U.S.C. § 2501 *et seq.* (the "TAA") and the Buy American Act, 41 U.S.C. § 10a *et seq.* (the "BAA"). Under this scheme, vendors having substantial contracts with the Government, including Dell, Hewlett-Packard, and Sun Microsystems, as well as a host of other, lesser-known companies have, over a period of at least the past six (6) years, fraudulently sold the Government thousands of HDDs manufactured in non-TAA approved countries such as China, Thailand, Malaysia, the Philippines and Indonesia.

In order to evade the TAA's prohibition on sales of products to the Government manufactured in a non-TAA approved country, the Defendants knowingly, intentionally and fraudulently certify to the Government's purchasing authority, the General Services Administration (the "GSA"), that the HDDs' country of origin is either the United States or TAA-approved countries, meaning those with which the United States has a trade agreement (such as, for example, Japan, Singapore, South Korea or the United Kingdom) They do so under the pretense that HDDs obtained from non-TAA approved countries are subjected to a "substantial transformation" into a "new and different article of commerce with a name, character, or use distinct from that of the article or articles from which it was transformed," before being sold to the Government. In actual fact, the Defendants

do little more than test the HDDs, sometimes add software, and place them in a protective metal enclosure. Under settled case law and interpretive rulings, these actions fall far short of the "substantial transformation" standard.

As a result of these violations of law, the Government has sustained hundreds of millions of dollars in recoverable damages. According to the Government's Office of Management and Budget, "the Federal Government is the largest single producer, collector, consumer, and disseminator of information in the United States." (Circular No. A-130, 2/8/96). To that end, the Government has spent approximately $3.8 billion per year on computer hardware and peripherals between FY 2004 and 2007.

In addition to these damages, the violations described in this Complaint undermine United States trade policy, leading to a loss of American jobs, and place companies that play by the rules (such as Relator's employer) at a competitive disadvantage *vis-à-vis* those, such as the Defendants, that do not.

2. The Act provides that any person who knowingly submits a false or fraudulent claim for payment or approval is liable for a civil penalty of up to ten thousand dollars ($10,000) for each claim, plus three times the amount for the damages sustained by the Government, and payment of legal expenses, including attorneys' fees.

3. The Act allows any person having information regarding a false or fraudulent claim against the government to bring a private cause of action on behalf of the Government and to share in the recovery, under certain conditions, which are met in this case.

4. As required by 31 U.S.C. § 3730(b)(2), Relator has provided, to the Attorney General of the United States and to the United States Attorney for the District of Minnesota, a statement in the form of a signed Declaration, reflecting in more detail the information set forth in the factual allegations of this Complaint. In addition, Government files and records contain information relevant to determination of the full extent of the Government's damages.

5. Because the Declaration includes attorney-client communications and the work product of Relator's attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in this litigation, the Relator understands this disclosure to be confidential.

## JURISDICTION AND VENUE

6. This action arises under the False Claims Act, 31 U.S.C. 3729, *et seq*. This Court has jurisdiction over this case pursuant to 31 U.S.C. § 3732 and 28 U.S.C. § 1331.

7. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) in that at least one Defendant transacts business in this District, and this Action "may be brought in any judicial district in which ..., in the case of multiple defendants, any one defendant can be found [or] transacts business." 31 U.S.C. § 3732(a).

8. All Defendants in this matter are involved in the same false claims, and adjudication of this matter against all Defendants will give rise to the same questions of fact and law.

## PARTIES

9. Relator is a citizen of the United States and a resident of the State of Minnesota. From 1988 to the present, Relator has been employed as a corporate compliance officer in the high tech field, first with 3M Corporation and, from 1996 onward, with Imation Corporation ("Imation"). Imation manufactures data storage hardware similar to the products at issue in this *qui tam* lawsuit, and Relator, as a result of his employment in the industry and personal investigations, is personally aware of practices and specific facts recited below.

10. In the course of his employment as an International Trade Specialist, Relator has had specific responsibilities for overseeing Imation's import trade compliance with the TAA, including ensuring that the proper country of origin designation accompanies any Imation products offered for sale to the Government. Under United States customs law, he has, on countless occasions, enforced country of origin and/or marking requirements for such products.

11. Relator also has a background in high technology, and is very familiar with the purposes, uses, manufacturing processes and intrinsic nature of HDDs. He has owned, assembled and disassembled numerous personal computers and their many peripheral devices, including HDDs, since at least 1985. One key to his success as a specialist in HTS Tariff Classifications has been his technical facility in assessing the core or primary product function, and the impact of that assessment on the product's "essential character."

12. Relator's employer, Imation, manufactures products which are competitive with HDD products that are the subject of this *qui tam* lawsuit. Due in part to Relator's oversight and diligence, Imation has at all times fully complied with applicable federal trade law, including TAA, BAA and regulations promulgated pursuant thereto.

13. Increasingly over time, Relator has become aware of and frustrated by what he has determined, through his investigations, to be a pervasive but covert disregard of these laws and rules by Imation's competitors, including the Defendants named herein.

14. Relator brings this action based on his direct, independent, and personal knowledge and also, where indicated herein, on information and belief.

15. Defendant Commercial Data Systems, Inc. is a Hawaii corporation.

16. Unistar-Sparco Computers, Inc. is a Mississippi corporation.

17. Lyme Computer Systems, Inc. is a New Hampshire corporation.

18. A&T Marketing, Inc. d/b/a A&T Networks is a Maryland corporation.

19. PC Mall Gov, Inc. is a Delaware corporation.

20. PC Specialists, Inc. a/k/a/ Technology Integration Group is an Indiana corporation.

21. MPC-G, LLC, is a Delaware limited liability company. Upon information and belief, it is a wholly owned subsidiary of MPC Corporation.

22. MPC Corporation is a Colorado corporation. Upon information and belief, it is the parent of MPC-G, LLC.

23. Force 3, Inc. is a Maryland corporation.

24. MA Federal, Inc. is a Delaware corporation.

25. Government Acquisitions, Inc. is an Ohio corporation

26. Insight Public Sector, Inc. is an Illinois corporation.

27. Promark Technology, Inc. is a Maryland corporation.

28. Emtec Federal, Inc. is a New Jersey corporation. Upon information and belief, it is a wholly owned subsidiary of Emtec, Inc.

29. Emtec, Inc. is a New Jersey corporation. Upon information and belief, it is the parent company to Emtec Federal, Inc.

30. GovConnection, Inc. is a Maryland corporation.

31. Red River Computer Company is a New Hampshire corporation.

32. Marzik, Inc. is a Maryland corporation,

33. World Wide Technology, Inc. is a Missouri corporation,

34. Dynamic Systems, Inc. is a California corporation,

35. AC Technology, Inc. is a Virginia corporation,

36. Oroday, Inc., d/b/a Digital Consulting Services, is a California corporation,

37. Sun Microsystems Federal, Inc. is California corporation transacting business in the State of Minnesota. Upon information and belief, it is a wholly owned subsidiary of Sun Microsystems, Inc.

38. Sun Microsystems, Inc. is a Delaware corporation, transacting business in the State of Minnesota. Upon information and belief, it is the parent company to Sun Microsystems Federal, Inc.

39. Computer International, Inc. is a Michigan corporation,

40. ImmixTechnology, Inc. is a Virginia corporation,

41. CDW Government, Inc. is an Illinois corporation. Upon information and belief, it is a wholly owned subsidiary of CDW Corporation.

42. CDW Corporation is an Illinois corporation. Upon information and belief, it is the parent company to CDW Government, Inc.

43. Dell Marketing L.P., is a Texas limited partnership, transacting business in the State of Minnesota. Upon information and belief, it is a wholly owned subsidiary of Dell, Inc.

44. Defendant Dell, Inc. is a Delaware corporation, transacting business in the State of Minnesota. Upon information and belief, it is the parent company of Dell Marketing.

45. Vion Corporation is a Delaware corporation.

46. Hewlett Packard Company is a Delaware corporation, transacting business in the State of Minnesota.

## FACTS

### Application of TAA and BAA to the transactions at issue

47. According to its declaration of purpose, the TAA was enacted by the United States Congress in 1979 in order to implement the Trade Act of 1974, to foster the growth and maintenance of an open world trading system, to expand opportunities for United States commerce overseas, and to improve the rules of international trade. 19 U.S.C. § 2502. The TAA designates as "approved" countries those that have trade agreements with the United States ("Approved Countries").

48. Under the TAA and the BAA, end products supplied to the Government, with limited specified exceptions, must be a product either (1) made in the United States of

America or (2) made in an Approved Country. The HDDs at issue in this lawsuit do not fall within the specified exceptions, and thus must satisfy the above test.

49. The countries of China, Thailand, Malaysia and the Philippines, among others, are not Approved Countries.

50. The United States General Services Administration ("GSA") is Federal Agency that supports the basic functioning of federal agencies by, among other things, supplying products and communications for Government offices.

51. The GSA maintains a web site, GSAAdvantage, through which federal employees throughout the country purchase end products, including HDDs. This website currently lists in excess of 4,800 HDD products, sold to the GSA by 300 different companies.

52. The TAA and the BAA apply to products sold via the GSA and through GSAAdvantage.

**Defendants' violations of TAA and BAA in general**

53. Each of the Defendants contracted with the Federal Government to sell HDDs through GSAAdvantage, and did sell, collectively, many millions of HDDs through GSAAdvantage.

54. Defendants were therefore required to declare, and did declare, that the HDDs so sold were in compliance with TAA and BAA.

55. Specifically, Defendants were required to declare and did declare, that the country of origin of such HDDs was either the United States or an Approved Country.

56. Defendants made those declarations by certifying in their contracts with the GSA that they were selling products manufactured in the United States or in a country with which the United States has a Trade Agreement.

57. Despite these legal requirements, Defendants unlawfully sold HDDs from countries which were not approved under the TAA ("Non-Approved Countries") to the Government by falsely or fraudulently claiming that the HDDs' country of origin was an Approved Country.

58. Defendants do so by engaging in the following scheme.

59. First, Defendant purchase HDDs from companies to build HDDs in Non-Approved Countries.

60. Second, after purchasing or sourcing them from Non-Approved Countries, Defendants make minor additions or changes to the HDDs that do not alter their "essential character" or work a "substantial transformation."

61. Third, Defendants sell the resulting HDDs to the Government, certifying by contract that their country of origin is an Approved Country.

62. The minor additions or changes referred to above typically consist of one or more of the following:

a. Adding a customized enclosure or load the HDD in a rack, storage array or storage server;

b. Formating the HDD (*i.e.*, preparing it for use by *inter alia* setting up an empty file system);

c. Adding backup software or encryption software to the HDD;

d. Changing a name alone, or

e. Re-labeling the product to describe it as a "Virtual Tape Library" or "Backup System."

63. Because these actions are insufficient to "substantially transform" the HDDs, Defendants do not change the country of origin of the HDDs from their initial place of manufacture in Non-Approved Countries.

64. Relator knows this to be a fact, because consistently and throughout the course of his employment, Relator has been involved in GSA-TAA compliance review, requiring the determination of the country of origin on a variety of products. These determinations vary in complexity based upon, among other things, the fundamental nature of the product in question, the number of constituent parts and the complexity of components.

65. Determing country of origin involves assessment of the subject product's "essential character." 19 C.F.R. 102.11; 48 C.F.R. § 52.225-5.

66. In the course of Relator's employment, he has been able to observe the conduct of some of the Defendants, by monitoring their product offerings and bidding activities in competition with Imation. In doing so, Relator has noted that these Defendants and other HDD sellers seek to source HDDs from the lowest cost countries. At the present time and for at least the preceding three years, all or almost all of the lowest cost countries have not been Approved Countries.

## Largest HDD Manufacturers

67. The world's six largest manufacturers of HDDs, Seagate, Western Digital, Toshiba, Samsung and Fijutsu, together controlled virtually the entire HDD market in 2005.

68. All six of the above manufacturers manufacture their HDD primarily in Non-Approved Countries. By way of example only, Hitachi manufactures its popular Deskstar models in Thailand and China. Seagate manufactures all of its high-end HDD's in Thailand and China. Western Digital manufactures its popular Raptor model in Malaysia and Thailand. All or nearly all of Toshiba's production has been moved to the Philippines, Indonesia and Thailand.

69. In sum, Defendants act with an intent to defraud the Government or, at minimum, negligently or recklessly fail to conduct the due diligence required to comply with federal law.

## Defendants' Specific violations

70. Upon information and belief, the country of origin of all or nearly all HDDs sold to the Government by each of the Defendants for the periods stated below was falsely represented to be an Approved Country. For illustrative purposes, one HDD product violation is shown for each Defendant.

**Hewlett-Packard Company**

71. Upon information and belief, Defendant Hewlett-Packard ("HP") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

72. Upon information and belief, sales of HDDs manufactured in Non-Approved Countries ("Noncompliant HDDs") by HP to the GSA from 2002 to the present to exceed $80 million.

73. Among other products, HP knowingly sells to the Government under its brand and name a Raptor model HDD manufactured by Western Digital in Malaysia and Thailand that is assigned by the GSA part number DY334AV and provided to federal agencies and offices in Minnesota and throughout the country.

74. HP sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that HP does not substantially transform the Raptor HDDs it purchases from Western Digital and re-sells to the Government.

**CDW Government, Inc.**

75. Upon information and belief, Defendant CDW Government, Inc. ("CDW") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

76. Upon information and belief, sales of Noncompliant HDDs by CDW to the GSA from 2002 to the present to exceed $53 million.

77. Among other products, CDW knowingly sells to the Government under its brand and name a Deskstar model HDT722525DLA380 HDD, manufactured by Hitachi in Thailand and China and purchased from Overland Storage, that is assigned by the GSA part number OV-REO1011050 and provided to federal agencies and offices in Minnesota and throughout the country.

78. CDW sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that CDW does not substantially transform the Hitachi Deskstar HDDs it purchases from Overland Storage and re-sells to the Government.

**Dell Marketing L.P.**

79. Upon information and belief, Defendant Dell Marketing L.P. ("Dell Marketing") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

80. Upon information and belief, sales of Noncompliant HDDs by Dell Marketing to the GSA from 2002 to the present to exceed $52 million.

81. Among other products, Dell Marketing knowingly sells to the Government under the Dell brand and name a Travelstar model HDD manufactured initially by IBM and later Hitachi in Thailand and China that is assigned by the GSA part number DellC-40.0 and provided to federal agencies and offices in Minnesota and throughout the country.

82. Dell sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Dell does not substantially transform the Travelstar HDDs it purchases from Hitachi and re-sells to the Government.

**Vion Corporation**

83. Upon information and belief, Defendant Vion Corporation ("Vion") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2003.

84. Upon information and belief, sales of Noncompliant HDDs by Vion to the GSA from 2003 to the present to exceed $40 million.

85. Among other products, Vion knowingly sells to the Government under its brand and name a Ultrastar-based canister unit HDD manufactured by Hitachi in the Philippines that is assigned by the GSA part number DKU-F505I-146JSP and provided to federal agencies and offices in Minnesota and throughout the country.

86. Vion sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Vion does not substantially transform the Ultrastar HDDs it purchases from Hitachi and re-sells to the Government.

**ImmixTechnology, Inc.**

87. Upon information and belief, Defendant ImmixTechnology, Inc. ("Immix") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2003.

88. Upon information and belief, sales of Noncompliant HDDs by Immix to the GSA from 2003 to the present to exceed $35 million.

89. Among other products, Immix knowingly sells to the Government under its brand and name a Deskstar model HDD, manufactured by Hitachi in China and Thailand and purchased from Network Appliance, that is assigned by the GSA part numberDSX-

7.0TB-PBNDL-R5 and provided to federal agencies and offices in Minnesota and throughout the country.

90. Immix sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that ImmixTechnology does not substantially transform the Hitachi Deskstar HDDs it purchases from Network Appliance and re-sells to the Government.

**Government Acquisitions, Inc.**

91. Upon information and belief, Defendant Government Acquisitions, Inc. ("Government Acquisitions") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

92. Upon information and belief, sales of Noncompliant HDDs by Government Acquisitions to the GSA from 2002 to the present to exceed $52 million.

93. Among other products, Government Acquisitions knowingly sells to the Government under its brand and name Deskstar model HDD, manufactured by Hitachi and purchased from Sun Microsystems, that is assigned by the GSA part number XTA3511R01A2W3000 and provided to federal agencies and offices in Minnesota and throughout the country.

94. Government Acquisitions sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Government Acquisitions does not substantially transform the Hitachi Deskstar HDDs it purchases from Sun Microsystems and re-sells to the Government.

**Emtec Federal, Inc.**

95. Upon information and belief, Defendant Emtec Federal, Inc. ("Emtec") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2005.

96. Upon information and belief, sales of Noncompliant HDDs by Emtec to the GSA from 2005 to the present exceed $18 million.

97. Among other products, Emtec knowingly sells to the Government under its brand and name a storage array HDD, manufactured by Seagate in China and purchased from HP, that is assigned by the GSA part number A7962A and provided to federal agencies and offices in Minnesota and throughout the country.

98. Emtec sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Emtec does not substantially transform the Seagate HDDs it purchases from HP and re-sells to the Government.

**Force 3, Inc.**

99. Upon information and belief, Defendant Force 3, Inc. ("Force 3") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

100. Upon information and belief, sales of Noncompliant HDDs by Force 3 to the GSA from 2002 to the present to exceed $15 million.

101. Among other products, Force 3 knowingly sells to the Government under its brand and name the Raptor model HDD, manufactured by Western Digital in Malaysia and

Thailand and purchased from Dell, that is assigned by the GSA part number 341-3682 and provided to federal agencies and offices in Minnesota and throughout the country.

102. Force 3 sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Force 3 does not substantially transform the Raptor HDDs it purchases from Dell and re-sells to the Government.

**Sun Microsystems Federal Inc.**

103. Upon information and belief, Defendant Sun Microsystems Federal Inc. ("Sun Federal") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

104. Upon information and belief, sales of Noncompliant HDDs by Sun Federal to the GSA from 2002 to the present to exceed $10 million.

105. Among other products, Sun Federal knowingly sells to the Government under the Sun brand and name a disk drive canister HDD manufactured by Hitachi in Philippines that is assigned by the GSA part number T9-DKU-F4551-72J1 and provided to federal agencies and offices in Minnesota and throughout the country.

106. Sun Federal sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Sun Federal does not substantially transform the disk drive canister it purchases from Hitachi and re-sells to the Government.

**Unistar-Sparco Computers, Inc.**

107. Upon information and belief, Defendant Unistar-Sparco Computers, Inc. ("Unistar") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

108. Upon information and belief, sales of Noncompliant HDDs by Unistar to the GSA from 2002 to the present to exceed $9 million.

109. Among other products, Unistar knowingly sells to the Government under its brand and name a Deskstar model HDD manufactured by Hitachi in Thailand and China that is assigned by the GSA part number 0A33409 and provided to federal agencies and offices in Minnesota and throughout the country.

110. Unistar sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Unistar does not substantially transform the Deskstar HDDs it purchases from Hitachi and re-sells to the Government.

**Lyme Computer Systems, Inc.**

111. Upon information and belief, Defendant Lyme Computer Systems, Inc. ("Lyme") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

112. Upon information and belief, sales of Noncompliant HDDs by Lyme to the GSA from 2002 to the present to exceed $8 million.

113. Among other products, Lyme knowingly sells to the Government under its brand and name Travelstar model HDD, manufactured by Hitachi in Thailand and China and

purchased from CMS, that is assigned by the GSA part number UABS272-60 and provided to federal agencies and offices in Minnesota and throughout the country.

114. Lyme sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Lyme does not substantially transform the Hitachi Travelstar HDDs it purchases from CMS Products and re-sells to the Government.

**Insight Public Sector, Inc.**

115. Upon information and belief, Defendant Insight Public Sector, Inc. ("Insight") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

116. Upon information and belief, sales of Noncompliant HDDs by Insight to the GSA from 2002 to the present to exceed $8 million.

117. Among other products, Insight knowingly sells to the Government a HDD model, manufactured by Toshiba in Philippines and China and purchased from Axiom, that is assigned by the GSA part number AXD-0180 and provided to federal agencies and offices in Minnesota and throughout the country.

118. Insight sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Insight does not substantially transform the Toshiba HDDs it purchases from Axiom and re-sells to the Government.

**Red River Computer Company**

119. Upon information and belief, Defendant Red River Computer Company ("Red River") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

120. Upon information and belief, sales of Noncompliant HDDs by Red River to the GSA from 2002 to the present to exceed $8 million.

121. Among other products, Red River knowingly sells to the Government a HDD canister, manufactured by Hitachi in Philippines and purchased from Sun Microsystems, that is assigned by the GSA part number T9-DKU-F455I-72J1 and provided to federal agencies and offices in Minnesota and throughout the country.

122. Red River sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Red River does not substantially transform the Hitachi disk drive canister HDDs it purchases from Sun Microsystems and re-sells to the Government.

**MPC-G, LLC**

123. Upon information and belief, Defendant MPC-G, LLC ("MPC-G") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

124. Upon information and belief, sales of Noncompliant HDDs by MPC-G to the GSA from 2002 to the present to exceed $7 million.

125. Among other products, MPC-G knowingly sells to the Government under its brand and name a Travelstar model HDD, manufactured initially by IBM and later by Hitachi in

Thailand and China and purchased from CMS, that is assigned by the GSA part number Dell5000-60.0 and provided to federal agencies and offices in Minnesota and throughout the country.

126. MPC-G sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that MPC-G does not substantially transform the Travelstar HDDs it purchases from CMS and re-sells to the Government.

**MA Federal, Inc.**

127. Upon information and belief, Defendant MA Federal, Inc. ("MAFI") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

128. Upon information and belief, sales of Noncompliant HDDs by MAFI to the GSA from 2002 to the present to exceed $7 million.

129. Among other products, MAFI knowingly sells to the Government a HDD, manufactured by Toshiba in the Philippines and China and purchased from Axiom, that is assigned by the GSA part number AXD-0180 and provided to federal agencies and offices in Minnesota and throughout the country.

130. MAFI sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that MAFI does not substantially transform the Toshiba HDDs it purchases from Axiom and re-sells to the Government.

**Marzik, Inc.**

131. Upon information and belief, Defendant Marzik, Inc. has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

132. Upon information and belief, sales of Noncompliant HDDs by Marzik to the GSA from 2002 to the present to exceed $7 million.

133. Among other products, Marzik knowingly sells to the Government under its brand and name a disk array HDD, manufactured by Hitachi in Thailand and China and purchased from Sun Microsystems, that is assigned by the GSA part number TA6140M11A2A8000 and provided to federal agencies and offices in Minnesota and throughout the country.

134. Marzik sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Marzik does not substantially transform the Hitachi disk array HDDs it purchases from Sun Microsystems and re-sells to the Government.

**Promark Technology, Inc.**

135. Upon information and belief, Defendant Promark Technology, Inc. ("Promark") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

136. Upon information and belief, sales of Noncompliant HDDs by Promark to the GSA from 2002 to the present to exceed $5 million.

137. Among other products, Promark knowingly sells to the Government under its brand and name an Ultrastar model HDD, manufactured by Hitachi in Thailand and China and purchased from Nexsan, that is assigned by the GSA part number G1F-421000HDRG and provided to federal agencies and offices in Minnesota and throughout the country.

138. Promark sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Promark does not substantially transform the Hitachi Ultrastar HDDs it purchases from Nexsan and re-sells to the Government.

**World Wide Technology, Inc.**

139. Upon information and belief, Defendant World Wide Technology, Inc. ("WWT") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

140. Upon information and belief, sales of Noncompliant HDDs by WWT to the GSA from 2002 to the present to exceed $5 million.

141. Among other products, WWT knowingly sells to the Government under its brand and name a disk array HDD, manufactured by Hitachi in Thailand and China and purchased from Sun Microsystems, that is assigned by the GSA part number TA3511M01A2A6000 and provided to federal agencies and offices in Minnesota and throughout the country.

142. WWT sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that WWT does not substantially

transform the Sun Microsystems disk array HDDs it purchases from Sun Microsystems and re-sells to the Government.

**AC Technology, Inc.**

143. Upon information and belief, Defendant AC Technology, Inc. ("AC") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2004.

144. Upon information and belief, sales of Noncompliant HDDs by AC to the GSA from 2004 to the present to exceed $5 million.

145. Among other products, AC knowingly sells to the Government disk array HDD, manufactured by Hitachi in Thailand and China and purchased from Sun Microsystems, that is assigned by the GSA part number XTD6140R11D2A8000Z and provided to federal agencies and offices in Minnesota and throughout the country.

146. AC sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that AC does not substantially transform the Hitachi disk array HDDs it purchases from Sun Microsystems and re-sells to the Government.

**A&T Marketing, Inc. d/b/a A&T Networks**

147. Upon information and belief, Defendant A&T Marketing, Inc. d/b/a A&T Networks ("A&T") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

148. Upon information and belief, sales of Noncompliant HDDs by A&T to the GSA from 2002 to the present to exceed $4 million.

149. Among other products, A&T knowingly sells to the Government a HDD, manufactured by ExcelStor in China and purchased from Iomega, that is assigned by the GSA part number 33615 and provided to federal agencies and offices in Minnesota and throughout the country.

150. A&T sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that A&T does not substantially transform the ExcelStor HDDs it purchases from Iomega and re-sells to the Government.

**PC Specialists, Inc. a/k/a Technology Integration Group**

151. Upon information and belief, Defendant PC Specialists, Inc. a/k/a Technology Integration Group ("TIG") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

152. Upon information and belief, sales of Noncompliant HDDs by TIG to the GSA from 2002 to the present to exceed $4 million.

153. Among other products, TIG knowingly sells to the Government under its brand and name a Travelsar model HDD, manufactured by Hitachi in Thailand and China and purchased from CMS, that is assigned by the GSA part number ABSPLUS-60.0 and provided to federal agencies and offices in Minnesota and throughout the country.

154. TIG sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that TIG does not substantially

transform the Hitachi Travelstar HDDs it purchases from CMS Products and re-sells to the Government.

**PC Mall Gov, Inc.**

155. Upon information and belief, Defendant PC Mall Gov, Inc. ("PC Mall") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

156. Upon information and belief, sales of Noncompliant HDDs by PC Mall to the GSA from 2002 to the present to exceed $3 million.

157. Among other products, PC Mall knowingly sells to the Government under its brand and name a Travelstar model HDD, manufactured initially by IBM and later Hitachi in Thailand and China and purchased from CMS, that is assigned by the GSA part number DELL5000-60.0 and provided to federal agencies and offices in Minnesota and throughout the country.

158. PC Mall sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that PC Mall does not substantially transform the Hitachi Travelstar HDDs it purchases from CMS Products and re-sells to the Government.

**Commercial Data Systems, Inc.**

159. Upon information and belief, Defendant Commercial Data Systems, Inc. ("CDS") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

160. Upon information and belief, sales of Noncompliant HDDs by CDS to the GSA from 2002 to the present to exceed $3 million.

161. Among other products, Defendant CDS knowingly sells to the Government a HDD, manufactured by Hitachi in Thailand and China and purchased from Sun Microsystems, that is assigned by the GSA part number XRA-ST1CE-250G7K and provided to federal agencies and offices in Minnesota and throughout the country.

162. CDS sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that DCS does not substantially transform the Hitachi HDDs it purchases from Sun Microsytems and re-sells to the Government.

**GovConnection, Inc.**

163. Upon information and belief, Defendant GovConnection, Inc. ("GCI") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2005.

164. Upon information and belief, sales of Noncompliant HDDs by GCI to the GSA from 2005 to the present to exceed $3 million.

165. Among other products, GCI knowingly sells to the Government a HDD storage array manufactured, by Seagate in China and purchased from HP, that is assigned by the GSA part number 349239-B21 and provided to federal agencies and offices in Minnesota and throughout the country.

166. GCI sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that GCI does not substantially

transform the Seagate storage array HDDs GCI purchases from HP and re-sells to the Government.

**Computech International, Inc.**

167. Upon information and belief, Defendant Computech International, Inc. ("Computech") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2004.

168. Upon information and belief, sales of Noncompliant HDDs by Computech to the GSA from 2004 to the present to exceed $3 million.

169. Among other products, Computech knowingly sells to the Government a HDD, manufactured by ExcelStor Technology in China and purchased from Iomega, that is assigned by the GSA part number 33500 and provided to federal agencies and offices in Minnesota and throughout the country.

170. Copmutech sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Computech does not substantially transform the ExcelStor HDDs it purchases from Iomega Corporation and re-sells to the Government.

**Dynamic Systems, Inc.**

171. Upon information and belief, Defendant Dynamic Systems, Inc. ("Dynamic") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2005.

172. Upon information and belief, sales of Noncompliant HDDs by Dynamic to the GSA from 2005 to the present to exceed $2 million.

173. Among other products, Dynamic knowingly sells to the Government a disk array HDD, manufactured by Hitachi in Thailand and China and purchased from Sun Microsystems, that is assigned by the GSA part number XTD6140R11D2A8000Z and provided to federal agencies and offices in Minnesota and throughout the country.

174. Dynamic sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Dynamic does not substantially transform the Hitachi disk array HDDs it purchases from Sun Microsystems and re-sells to the Government.

**Oroday, Inc., d/b/a Digital Consulting Services**

175. Upon information and belief, Defendant Oroday, Inc., d/b/a Digital Consulting Services ("Oroday") has engaged in the practice of selling HDDs manufactured in Non-Approved Countries to the GSA under false claims of country of origin since at least 2002.

176. Upon information and belief, sales of Noncompliant HDDs by Oroday to the GSA from 2002 to the present to exceed $2 million.

177. Among other products, Oroday knowingly sells to the Government under its brand and name a disk array model HDD, manufactured by Hitachi in Thailand and China and purchased from Sun Microsystems, that is assigned by the GSA part number TA6140M11A2A8000 and provided to federal agencies and offices in Minnesota and throughout the country.

178. Oroday sells this product to the Government under the false claim that it is manufactured in an Approved Country, despite the fact that Oroday does not substantially transform the Hitachi disk array HDDs it purchases from Sun Microsystems and re-sells to the Government.

## COUNT I

### Violation of 31 U.S.C. § 3729(a)(1),(2)

179. Relator realleges and incorporates the above allegations as if fully set forth herein.

180. Defendants knowingly offer HDDs for sale to the Government through GSAAdvantage that are end products from Non-Approved Countries.

181. At all time from 2002 to the present, Defendants continuously and repeatedly, knowingly submitted false or fraudulent claims for payment and reimbursement to the Government.

182. Defendants did so by certifying by contract to the Government that they were selling HDDs manufactures in Approved Countries, when Defendant knew that the HDDs were not in fact manufactured in such countries.

183. By the aforesaid conduct, Defendants knowingly presented or caused to be presented to the Government false or fraudulent claims for payment.

184. Defendants, in engaging in this course of conduct, violated of the False Claims Act, 31 U.S.C § 3729(a)(1) and (2).

185. The United States Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid compensation to Defendants of

hundreds of millions of dollars. The United States is therefore entitled to, and Relator is entitled to share in, fines, treble damages and forfeiture.

## COUNT II

## Violation of 31 U.S.C. § 3729(a)(3)

186. Relator realleges and incorporates the above allegations as if fully set forth herein.

187. At all times between 2002 and the present, Defendants knowingly offer HDDs for sale to the Government through GSAAdvantage that they know are end products from Non-Approved Countries.

188. Defendants knew those HDDs not to be end products of Approved Countries.

189. Defendant nonetheless certified in their contracts with the Government that these HDDs were products from Approved Countries.

190. Defendants knowingly submitted these false or fraudulent claims to the Government and caused their false and fraudulent claims to be paid by the Government.

191. By the aforesaid conduct, Defendants knowingly caused the Government to pay hundreds of million of dollars on false claims.

192. The Government continues to pay the Defendants' aforementioned false claims.

193. Defendants, in engaging in this course of conduct, violated of the False Claims Act, 31 U.S.C § 3729(a)(3).

194. The Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid compensation to Defendants of many millions of dollars. The United States is therefore entitled to, and Relator is entitled to share in, fines, treble damages and forfeiture.

## COUNT III

## Unjust Enrichment

195. Relator re-alleges and incorporates the above allegations as if fully set forth herein.

196. Defendants have derived economic benefit from payments by the Government of their false and fraudulent claims.

197. As a result, Defendants have been unjustly enriched, entitling the Government to quasi-contract relief.

## COUNT IV

## Injunctive Relief

198. Relator re-alleges and incorporates the above allegations as if fully set forth herein.

199. The Government has been damaged by the acts of the Defendants.

200. If permitted to continue engaging in unlawful and fraudulent acts, the Government will continue to suffer and incur pecuniary damages.

201. As a result, the United States is entitled to injunctive relief to prevent further violations of law by the Defendants.

**WHEREFORE**, Relator respectfully requests this Court to enter judgment against Defendants, as follows:

A. That the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims and fraud alleged within this Complaint.

B. That the United States be awarded damages in an amount equal to the amount to be forfeited by Defendants, that Defendants received by virtue of their false claims.

C. That civil penalties of $10,000 be imposed for each and every false claim that Defendants presented to the United States.

D. That pre- and post-interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the Relator necessarily incurred in bringing and pressing this case.

E. That the Court grant permanent injunctive relief to prevent any recurrence of the violations of the False Claims Act for which redress is sought in this Complaint.

F. That the Relator be awarded the maximum amount allowed to them pursuant the False Claims Act.

G. That this Court award such other and further relief as it deems proper.

**Demand For Jury Trial**

Relator, on behalf of himself and the United States, demands a jury trial on all claims alleged herein.

**MANSFIELD, TANICK & COHEN, P.A.**

Date: July 30, 2008

By: ______________________________

Marshall H. Tanick (#108303)
Seymour J. Mansfield (#006271)
Charles A. Horowitz (#0294767)
Jean B. Roth (#0348181)
1700 U.S. Bank Plaza South
220 South Sixth Street
Minneapolis, MN 55402-4511
(612) 339-4295

**ATTORNEYS FOR RELATOR**

#446564